Good morning. My name is Anne Traum. I'm appearing on behalf of Mr. Thomas. Mr. Thomas raises two issues in this case. The first is that he was not advised of his Miranda rights, and second, that he did not waive them. We maintain that the district court erred in holding that he was advised of his Miranda rights and that it made no – it failed to analyze at all, or in any meaningful way, whether he validly waived his Miranda rights. There were – on the issue of the Miranda warnings, the Court made – there were really two problems. The first is that it held the defense witnesses to a much higher standard and discredited their testimony for arbitrary reasons. And at the same time, and in the face of contradictory testimony, not just from the sister – from the defendant's sisters, but from another officer, the Court failed to examine the credibility of the officer's testimony, which it essentially took at face value. I'd just like to bring up some examples of this. Compare the Court's treatment of the sisters' testimony. Can I give you a little advice? Sure. Okay. Thank you. The way – I'd just like to compare the way that the Court treated the sisters compared to the officers. The sisters were discredited because they were sisters of the defendant, so based on their relationship. At the same time, the Court ignored the arresting officer's own self-interest in validating his arrest procedures. And the only other person who said that he heard the Miranda warnings was the arresting officer's longtime partner, Officer Breath. And Officer Breath, the fact that he had this relationship with the arresting officer was not mentioned. And at the same time, Officer Breath had problems with – there were problems with his ability to perceive the events. He admitted that he was distracted. He said that he heard the Miranda warnings, but then also said that right at that same time, he left the scene and went to a different building. So it was held against the sisters that they were distracted. It was not held against Officer Breath that he was distracted, nor was it held against the arresting officer that he was very fuzzy on a lot of the details of that evening, including the time, the other people, where they were standing, who was there, whether there were any civilians there. The Court held it against the sisters that they failed to alert the officers to the failure to give Miranda warnings. There's simply no duty to do that. And the testimony of at least one of the sisters, Deanna Thomas, makes clear that she wasn't looking out for her brother that night. She was scared that she was going to be hauled off or that these problems were going to cause her to be evicted from her apartment. So it's – I think it's fairly obvious from her testimony that she wasn't acting in his self-interest. She's acting in her own self-interest and wasn't sort of in a mind frame to alert the officers to his – and, of course, she had no duty to. The Court asked the sisters to identify the officers in court. So the Court tested the sisters' ability to recognize these officers in court. The Court never tested the officers' own ability to – on specific issues such as an identification. And as I just mentioned, Officer Solorio, the arresting officer, he initially couldn't even remember whether there were any civilians present at the time. He was in his testimony. I think he later remembered that the sisters were there, but he had to be reminded of that. And the Court made – made much ado, as did the government, about Deanna Thomas's mistaken recollection that she had told the grand jury something about the failure to Mirandize. As defense counsel made clear in the hearing, she was never asked that. She didn't give narrative testimony. She was simply wrong in her recollection. But she wasn't caught in a lie. I mean, she was not impeached by that fact. So that was sort of a mountain out of molehill in terms of attacking her credibility. So the problem I had when I read this part of the argument was this looked like a – you know, there's two versions of what happened. And the district court was called upon to make a credibility determination and credited the testimony of the officers. That's pretty hard to set aside. Where I would take issue with that, and I understand it's an abuse of discretion standard. I mean, not abuse of discretion, but clearly a running standard, and our position is that he clearly erred. And I guess what I was left with when I reread and studied the district court's decision is not so much that he actually weighed the credibility of testimony. My sense was that he discarded the sisters' testimony and took the officers' testimony at face value. He didn't – he didn't evaluate their problems and sort of grapple with whether those were actually problems in terms of whether they were believable. He just said that the sisters were less credible. And even if you say the sisters were less credible, you're still left with one officer who was really in the best position to hear whether Miranda warnings were given, because – and that's Officer Slattery. Unlike Officer Breth, who said that he was there, but then he left the scene. It's unclear whether he – and he said he was distracted. It's sort of unclear where he was and what he heard. Officer Slattery, by contrast, he said he was there when Officer Solorio went to get the gun and brought it back. So he was there before the interrogation and during the interrogation, and he said he has no memory of whether the Miranda warnings were given. And I found it incredible, and I think this Court could as well, that he said, oh, I would really notice one way or the other. Now, this is an officer who is trained in arrest procedures. He is keenly aware and trained to notice these kinds of details. He's the best person on the scene with the least sort of potential or actual bias, and he doesn't remember a Miranda warning being given. He doesn't remember ever hearing a waiver or seeing a waiver. And so – Kennedy. Let me ask you. Let's say those statements were eliminated. Which statements? The statements that your client made. Mm-hmm. The un-Mirandaized statements. I mean, statements you contend. So where would that leave the evidence in this case? Well, I guess what the testimony – He was there, and he was yelling. Right. And then the cops show up. He's running away. They knew shots were fired. He throws something into the bush. They grab him. And after they chase him, and he says – what did he say? I give up? You know? Well, I – Yeah. And then they find the gun, and what else would they need? Well, I actually think that maybe I need to just be clear. I'm not – I don't think that any shots were fired here. I think he – there was a threat earlier. They were called to a divestiture. Okay. There was a threat. I'm going to shoot the place up was allegedly what was said earlier. There was no testimony at the hearing. I'm just trying to be a little more dramatic. I understand. There was no testimony that they actually – they saw him run. They didn't actually see him throw a gun. He threw some rock, right? Isn't that what they said? He may have thrown something earlier, but it wasn't – they never saw him. When they chased him, they never see him actually throw a gun. So they actually do have to connect this gun back to him. The other people said he was throwing rocks and making a lot of noise outside. Okay. But I thought your question was focusing on they've got the gun and they have the situation. But when they chased him, wasn't there testimony from one of the officers? They saw him throw something? I don't think they actually saw him throw the gun. No, no. They saw him throw something. It's not clear to me that that was there. So I'm sorry if I'm mistaken on that. But they have the – so they retrieve a gun, and he's there. And they start asking him, is this your gun, is this your gun, is this your gun? And he says, no, no, no, it's not. And then finally, and possibly with encouragement by his sister to sort of get this thing over with, he sinks his head, according to her testimony, and says, it's mine. So that's, you know, that's a critical connection tying the gun to him because it's not clear that they saw the gun earlier, that he had it, or that that was whatever he threw when he ran because they didn't see him throw a gun. So I would like to turn to the waiver issue briefly. There's something happening here, which is that once the Miranda issue warnings, assuming they're given for argument's sake, once they're given, it seems like nobody cares whether they were waived or whether he understood them, because the cops treat it that way, the police do, and it seems like the district court unfortunately treated it in the same way, which is – Breyer, Supreme Court does the same thing most of the time. Well, he actually did waive – he raised this issue of waiver, that this was not enough. And so here we have one officer whose uncorroborated testimony is simply that he understood. I mean, there's – we – that does not prove that there was a waiver here. It doesn't prove that it was voluntary. It doesn't prove that he understood, that it was explained to him. There's no written waiver. There's no conversation about what this all actually means. So this is really skimpy. Oh, sorry. This is really skimpy. And in addition to that, we have the problem that the district court did nothing about it. I would urge this Court, using a Genova review standard on the issue of whether this was actually voluntary in the absence of anything by the Court, to find that he didn't actually waive his Miranda rights. Thank you. Did he object to the magistrate judge's report and recommendation on that ground? He did, yes. In the objections? Yes, he did. I believe that he raised the issue before the hearing. He developed it at the evidentiary hearing, the waiver issue I'm talking about. He talked about it in his objections on page 144 of defendant's excerpts of record, where he specifically said that there was no waiver form produced, and he argued it slightly differently, saying, so that makes it even less credible that the warnings were ever given. But he's still talking about the waiver issue. So I think it's sufficiently preserved, and under this Court's authority in Cannes, that's been preserved and developed. Well, it included the district court. One of the things the district court could have done would have been to send it back to the magistrate judge and say, make a specific finding on whether or not there had been a waiver. Right. I mean, that's the whole purpose of making objections, is to give the Court that opportunity. I think it was adequately preserved for that very purpose, and, you know, not to sort of reserve the vernacular, but I think it's just sort of blown off by the police as well as the magistrate judge and the district court. Thank you. Thanks. Good morning. Russell Marsh for the government again. I think you have a very good point, Judge Payes. I don't think that that issue was brought up in the objections. I don't think it was even brought up during the hearing itself. The only time that the waiver issue was even discussed at all in passing was in a very brief cite to Butler at the end of the motion, which itself states the only issue before this Court is whether Thomas was apprised of his constitutional right not to incriminate himself. So the whole issue, the whole hearing is about whether he was Mirandized or not. The judge makes a credibility decision between the testimony of the officers and the testimony of the two sisters. Well, does it necessarily imply that he was concerned about whether or not he waived his rights as well? Well, you can make the argument by once you raise Miranda that that has to be shown. That's part of it, isn't it, getting a waiver? It has to be a knowing and intelligent and voluntary waiver. Absolutely. That's the test. Okay. On the other hand, there's also plenty of precedent in this circuit that unless you raise a factual issue that, you know, you're not even entitled to an evidentiary hearing on the issue and they never made any claim in their motions, in their evidentiary hearing, in the objections about the waiver issue. Well, why don't the police there have them sign a written form? It's not so hard, is it? That would be? They've got those forms. We've seen them. If they'd done that, we wouldn't be sitting here having this talk. Why don't they do it? I mean, are you going to educate them on that? Well, I think there's the issue is not whether really they had to do that, because obviously they don't have to. Let me tell you something. Miranda's been around since 1965, right? Right. Okay. I became a municipal court judge in Los Angeles in 1965, and I was doing preliminary hearings in Foothill, Foothill Station, you know, where they bring them over. And the officers were, you know, goofing up on these waivers. So there was somebody, I think in Las Vegas or Reno, who was selling these laminated cards for $0.10 apiece, you know, had the Miranda rights and a waiver in the back. So I sent $10 over there, and I got 100 of them. And every time the police would screw up, I'd give them one of the cards, you know, and they'd put them in their wallet. And that's what they used. And, of course, that's what Some of them are using them today, and they think about me every time they pull it out of their wallet. I'll bet they do, Judge. Why can't that be done? And that's exactly what the testimony was here. The officer's lawyer pulled out his card and read the rights. And the LAPD has it right on their or they used to have it right on their notepads, all printed up right there. Although I would say every police officer, when I used to teach criminal procedure, I'd have everybody memorize. I think anybody can memorize those four rights and ask somebody whether they understand them or not. But it's good to have that card. That's what they had in this case. And that's what the testimony was. Does the card present any evidence? I believe they actually pulled it out during the hearing and read it is what it looks like from the record. I don't know why they didn't make a copy of it and have it preserved for the record. But remember the I was just going to say, this was a motion to suppress his statements. Yes, it was. Why does it necessarily imply waiver? Well, the Court denied the motion to suppress. Right. It didn't particularly talk about the waiver issue, I would argue, because it wasn't particularly brought up. It wasn't brought up again during the objections. And remember, we're in a weird procedural situation. I'm a little bit concerned about the fact that there might be some problem with the objections. You see, I'm always amazed. In the central district in California, when we did a motion to suppress, the district court judges did the motions directly without sending them to a magistrate judge. So we were in complete control. And here, I guess the practice in Las Vegas or in Nevada, the Nevada district, is to send these to the magistrate judge, let the magistrate judge conduct the evidentiary hearing and do a report and recommendation. And that's all it is. And then the defendant, but the defendant has the right to object. Yeah. And remember, anything he doesn't bring up is waived. Well, that's what I'm a little bit concerned about. And also, you've got the procedural posture where he's pled guilty. And the only thing he's preserving is the denial of the motion to suppress. So I think Judge Predersen had a good point. What happens if you reverse this case? Do we go back to the district court or the magistrate judge to make a determination about whether there was a waiver? Do we throw out the statement and go to trial without it? I mean, where does this get the defendant, even if he wins? Well, you'd have to do the – well, I mean, he made a motion to suppress, didn't he? He did, to suppress his statements. And it was denied twice. Twice. And then he pleads guilty, and he says, the only thing that I'm preserving is this denial of the motion to suppress. I waive everything else. And now, for the first time on appeal, he starts arguing waiver, something that was never brought up before. Well, and waiver is an inherent part of it. I mean, you've got to give them the rights. You've got to get a waiver. Isn't that part of it? It is part of it, but it was never contested below.  right or wrong. Did the officers ask him if he understood his rights and if he wanted to waive them? And there certainly was evidence presented by the government to show waiver. There are testimonies to that. Yes, there is, that he was read his rights, that he said he understood it, and then he made a statement. No, no, no, no. I mean, did the officers say, I read him his rights, and I asked him if he waived his rights? No. We're certainly, we're arguing, well, first off, the issue never came up. But the evidence that was there was that it would have been an implied waiver under North Carolina v. Butler, that simply by answering questions that he, and saying he understood and answering questions, there was a waiver. But that was never decided. And then we have a conditional plea, and it's brought up, you know, it's like sandbagging of the worst type. They could have brought it up at the hearing. They could have brought it up in the ejections. And now you're here in the worst circumstance to look at. So the federal offenders are sandbagging you now? Sounds like it. Sounds like they've got a chokehold on you. I hope not. I don't feel like I've got a chokehold on me. I feel like. You've got a big, thick neck, so I wouldn't worry. Sorry. And it's tightening up the longer I stand here in front of you. All right. Listen, we're having a good time, aren't we? Yes, we are. All right. But, I mean, would you have, my question is, was there enough evidence to convict him of being a felon in possession of a firearm without having to do it, put into evidence any of the words that came out of his mouth? I certainly think there would be. Of course, that never came up because he pled guilty. If this case were remanded, I guess we'd find out, and the defendant would lose the benefit of his plea. Well, I mean, well, you had the suppression hearing. We did have a suppression hearing. You didn't argue at the suppression hearing that, look, Your Honor, we don't really need these statements. You know, the guy who was there, we came up on the scene, and we knew there was a disturbance, and he starts running away, and we chased him. Wasn't there some evidence the officers saw his hand move towards a bush? I think so, yes. But it certainly is always better if you have a confession. And then they catch him, huh? Right. They catch him, and he says, you got me, you know. And then they go fetch the gun. Isn't that enough? Could be. Like I said, it's better with a confession. I mean, it's not like the last two cases where I don't think the confession added anything. It's not that type of overwhelming proof. But the confession helps. It wasn't thrown out. But if this case were remanded, I think there's an issue of whether you hit – whether we go back and we have an issue on whether there was waiver. Right. Or be necessary to have the district court make a finding on waiver. Exactly. That's one way of looking at it. And the other would be that we, as you suggest, go to trial and see whether the other evidence is enough. But I think the particular procedural posture where you have a – have a conditional plea that only preserves issues of a race group below. I remember I had cases. I think it was a bank robbery case. And so the defendants, through their counsel, public defender, made a motion to suppress, you know, the statements. And I granted the motion. And they said, well, okay. Isn't that the end of the case, Judge? I said, no, that's not going to come in. But, you know, the fingerprints come in. The money that exploded comes in. So you don't have that. Do you have that here? I think they'd have enough to go forward. But, obviously, the only issue here is whether or not to overturn the judge's motion to suppress and denying the motion to suppress. Thank you. Any rebuttal? Thank you very much. I would like to just note for the Court the way this was brought up in the district court, because I think it's obviously critical to the Court's decision here whether this issue – whether the waiver issue was waived. At page 6 in the excerpts, defense argues, the government must prove that the statements were obtained in a constitutional manner, and then in a parenthetical explains the burden to prove that the accused waived the right. Then during the evidentiary hearing on page 55, defense counsel questions Officer Breth, was there a waiver form signed? On page 62, he questions Officer Slattery, was a waiver form signed by the defendant? Why is he asking that? Because waiver is an issue. And then in the – in his objections on page 144, he's arguing that the lack of a waiver goes to the lack – you know, sort of reinforces that we're very doubtful that there were any Miranda warnings read at all. So I would say that it came up before, during, and after the hearing, the government was on it. Did he say, I object to the report and recommendation on the grounds that the magistrate judge did not make a finding regarding waivers? I don't think it's that clear. I don't think it's that clear. And unfortunately, you know, it would have been better if it were. But I also think that under Kahn, the issue is there. It's presented, developed, and preserved. And as part of our appellate strategy, we can emphasize something else as long as it was preserved in the district court, and that's what happened here. So if the district court was required to make a finding on it and didn't, what's the remedy? I think the remedy is remand for finding on the waiver. And per Matthews, this Court – I would ask this Court to exercise its discretion to order that no evidentiary hearing be allowed on this issue, because I think it was – that chance has already passed, and the evidence is not going to get any better that this defendant waived. So I would just remand for the finding, and we could live with that. For a finding without any additional evidence? Well, I think the evidence is there. I mean, the evidence is there. One officer says he understood. That's the arresting officer. The other officer says that there was no waiver form signed, and he didn't hear anything after he heard the Miranda warnings. And the third officer says didn't hear a Miranda, didn't hear a waiver, didn't see a waiver. He told us this morning. So that's it. I'm going to move on to the next argument. All right. You have another argument, do you? You have the next case, too? Yes, I do. All right. I think my counsel has changed. This is? Eastwood. Eastwood. Yeah.
judges: Pregerson, Beam Paez